

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-3783
Re: Exemptions of county owned lands from taxation.

We acknowledge receipt of your request, accompanied by two letters addressed to you by Honorable J. B. Earnest, County Judge of Kent County, relating to the above captioned subject.

Judge Earnest's letters, omitting formal and other parts not pertinent to the inquiry, read respectively as follows:

"In order for you to determine whether or not Kent County will be required to pay state ad valorem taxes on Sections Nos. 11, 19, 20, 21 and 22 in Block No. 50 of the Public School Lands in Hudspeth County, Texas, I submit the following as a complete statement of all the facts in connection with this county's acquisition of the land:

"After advertising for and receiving bids or proposals to be selected county depository of the funds of Kent County, the Commissioners' Court of that county did at its February Term, 1931, select as such depository The First National Bank of Jayton, Texas, and required bonds to secure the school funds in the amount of $40,000.00 and to ascure the county funds in the amount of $75,000.00. These bonds were delivered and approved. T. E. Murdoch and several other individuals were sureties on both of these bonds, each furnishing a financial statement at the time of the presentation of the bonds. On Mr. Murdoch's financial statement there was listed, among other property, 3200 acres of grass land in Hudspeth County, valued on the statement at $24,000.00, against which there was listed an indebtedness to the State Fund of $4800.00.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"The First National Bank of Jayton, Texas, failed on or about the 8th day of June, 1932, defaulting on the above mentioned bonds. Suit was filed by Kent County on the bonds and depository contract, which, upon trial in the Federal District Court for the Northern District of Texas, at Lubbock, resulted in a judgment in favor of Kent County against all of the defendant bondsmen, including T. E. Murdoch, for a total principal amount of $100,417.20. This judgment also foreclosed a deed of trust lien on the above described land given by Mr. Murdoch as an indemnity security in connection with the bonds.

"The judgment just mentioned was rendered on July 18, 1934. Thereafter, and on the 25th day of May, 1935, T. E. Murdoch conveyed the land to Kent County, Texas, 'a political subdivision of the State of Texas', reciting a consideration of Ten Dollars. Murdoch was insolvent and by reason of this judgment Kent County held far more than fifty per cent of the claims against him. At the time this deed was executed the Commissioners' Court satisfied itself that this was the only property owned by Mr. Murdoch that was subject to execution. The true consideration for the deed was an intention on the part of all concerned to apply whatever the county should ever receive for the land on the judgment mentioned above, which could never be collected in full. These proceeds were and are to go pro-rata to the separate public funds on deposit in the depository bank at the time of its failure.

"Kent County has continued to own the land for the reasons that there has never been a fair offer for the land, notwithstanding that the county has repeatedly tried to find a buyer for same, and has, therefore, continued to hold the same in an attempt to preserve the public funds of the county. It has never been leased or rented and the county has received nothing for its use.

"We think the equity owned by Kent County in the land is worth about $2500.00, and believe the county will eventually realize that amount from same. This is unpatented State School land and the permanent school funds holds a lien for the unpaid purchase price therefor.

Honorable George H. Sheppard, page 3

"At the time of the failure of the depository bank there was on deposit therein the following amounts to the credit of each respective fund:

| | |
|---|---|
| "Common School District State & county funds | $1,387.21 |
| Common School District Local Maintenance | 6,551.46 |
| Common School District Schoolhouse bond | 13,106.15 |
| Common School District Rural Aid | 286.64 |
| Common School District Building | 90.06 |
| County Available School | 1,284.18 |
| County Permanent School | 5,787.66 |
| County Administration | 409.07 |
| Court House Bond | 7,759.01 |
| Jail Bond | 2,646.47 |
| Road and Bridge Bond | 4,234.98 |
| Special Road District No. 1 Bond | 7,603.02 |
| Special Road District No. 2 Bond | 23,484.39 |
| Special Road District No. 7 Bond | 18,628.56 |
| General Fund Warrant Sinking | 1,276.04 |
| County Highway Warrant Sinking | 337.13 |
| Road & Bridge Warrant Sinking | 175.65 |
| General Fund | 239.27 |
| Jury Fund | 794.36 |
| Road & Bridge Fund | 754.94 |
| Permanent Improvement Fund | 2,411.59 |
| County Highway Fund | 883.37 |

"There has been reimbursed to each of the above funds, from collections made from the receiver of the defunct bank and from the bondsmen, thirty-four per cent of the above amounts, not counting the land above described.

"At the time of the failure of the depository bank Kent County was not operating on a cash basis, some of the funds above appearing as 'current funds' being several years behind. There was outstanding script, issued by the county clerk, against each of the last five named funds which had been registered by the treasurer, but on which there had been no checks issued, for the reason that scrip previously registered by the treasurer was outstanding in sufficient amounts to take up the money then on deposit with the depository as shown above."

Honorable George H. Sheppard, page 4

"Kent County owns Sections Nos. 24 and 25 in
Block 74 and Section 5 in Block 75, Public School
Lands in Hudspeth County in addition to the lands
described in my letter to you of this date and here-
with attached. The county acquired title to these
three sections in a manner different from that by
which they acquired title to the land described in
the attached letter. In addition to the information
given in the other letter, you are advised in con-
nection with these three sections as follows:

"When the First National Bank of Jayton, Texas,
failed the Comptroller of Currency appointed a re-
ceiver therefor. After a portion of the assets of
the defunct bank had been liquidated, the Comptroller
of Currency and a court of competent jurisdiction au-
thorized and ordered the sale of the remaining as-
sets to Kent County, it having been the highest
bidder for said assets and owning practically all
of the claims against the defunct bank. A deed to
these three sections of land was executed by the re-
ceiver and accepted by the county in which the con-
sideration was recited as $10 and other good and
valuable consideration paid.

"With the exception of the facts as herein stat-
ed, the situation as to this land is the same as set
out in the attached letter."

We have been further advised that taxes levied and assessed against
this land for State, county, and school purposes are delinquent for
one or more years prior to the time Kent County acquired title
thereto. Also that taxes are delinquent for several years since
the land was acquired by said county. We are not advised whether
Kent County has, since it acquired title to the land, legally and
annually rendered the same for taxation. This fact may or may not
become important in determining the questions to be hereinafter
considered. Those questions may be stated as follows:

(1) Was the land, after it was acquired by Kent
County, subject to taxation by either the State of
Texas, Hudspeth County or the school district?

(2) Is Kent County, in order to protect its in-
terest in the land, required to pay the State of Texas,

Hudspeth County, or the school district the delinquent taxes which accrued against the land before it acquired same?

The language used by Judge Funderburk concerning the question of the exemption from taxation of the property involved in the case of City of Abilene v. State, 113 S. W. (2d) 631 (Application dismissed), is applicable to the factual situation with which we are here concerned. He said:

"The question of the exemption of said property from taxation involves the proper interpretation of constitutional and statutory provisions, the material portions of which, are as follows:

"Const. art. 8, § 1:  'All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value. * * * Provided, that two hundred and fifty dollars worth of household and kitchen furniture, belonging to each family in this State shall be exempt from taxation.'

"Const. art. 11, § 9:  'The property of counties, cities and towns, owned and held only for public purposes, * * * and all other property devoted exclusively to the use and benefit of the public shall be exempt from * * * taxation.'

"Const. art. 8, § 2:  'The Legislature may, by general laws, exempt from taxation public property used for public purposes; actual places of religious worship; places of burial not held for private or corporate profit; all buildings used exclusively and owned by persons or associations of persons for school purposes and the necessary furniture of all schools, (also the endowment funds of such institutions of learning and lands) and institutions of purely public charity; and all laws exempting property from taxation other than the property above mentioned shall be null and void.' (Italics ours)

"Revised Statutes 1925, art. 7150:

"'The following property shall be exempt from taxation, to-wit: * * *

Honorable George H. Sheppard, page 6

> "'All property, whether real or personal, be-
> longing exclusively to this State, or any political
> subdivision thereof.'" (Underscoring ours)

Article VIII, Section 2, of the Constitution, authorizes
the Legislature to pass general laws exempting from taxation pub-
lic property used for public purposes.

Article 7150, Revised Statutes, declares that "All pro-
perty, whether real or personal belonging exclusively to this State,
or any political subdivision thereof shall be exempt from taxation."

The pertinent parts of Article 7150, when read in connec-
tion with the limitation on the authority of the Legislature to
exempt from taxation "public property used for public purposes" by
Article 8, Section 2, supra, was held valid in the case of City of
Abilene v. State, supra. The effect of said opinion is the same
as if said pertinent parts read:

> All property, whether real or personal belong-
> ing exclusively to this State, or any political sub-
> division thereof, used for public purposes, shall be
> exempt from taxation.

There are certain constitutional and statutory exceptions
to the above statute, as so construed, among others are Sections 6a
and 16a, Article 7, and Section 1a, Article 8, of the Constitution
and Sections 17, 18, Article 7150, Revised Statutes, with which we
are not here concerned.

We have found no decision of the courts of this State
based upon a like state of facts.

In the case of State v. City of Houston, 140 S. W. (2d)
277, (writ of error refused), it was held that property purchased
with money from a special fund by a city, in excess of portion re-
quired for a boulevard, for purpose of obtaining a better bargain,
but held by city for sale at a fair price, was held for a "public
purpose," in sense that it was bought and was being held to preserve
the special fund, and hence was not subject to taxation by the
State of Texas and Harris County. The court found that the city
purchased the entire tract, including the part used for a boulevard
as well as the excess not so used, to preserve the special fund
from which the purchase price was paid. With reference to this
finding, the court said:

"If the property was bought and is being held
to preserve such fund, how can it be said that it
was not bought, and is now being held for a public
purpose. * * * When the city does sell such pro-
perty, it must necessarily apply the proceeds to
'Roadways to Turning Basis Funds and Bonds.'"

The Court, after quoting at great length from the case of the City
of Sherman v. Williams, 84 Tex. 421, 19 S. W. 606, concludes its
opinion by saying:

"The trial court's judgment is clearly right
if the property constitutes a part of the special
fund; and it seems clear to us that such property
is so; if any case, the stipulated facts support a
finding by the trial court to that effect, and we
will assume the court so found. This being so, it
is neither taxable nor capable of being sold for
taxes, and thus diverted. Of course, if taxes could
be levied on it, it could be seized and sold for
taxes."

An examination of the 1st of funds held on deposit to
the credit of Kent County by the depository bank at the time it
failed and went into involuntary liquidation, discloses that of
the total of more than $100,000 to the credit of said county only
$239.27 was credited to the county's General Fund, the balance was
to the credit of numerous special funds, none of which could be
diverted to any other fund or purpose, but must be used exclusive-
ly for the purpose for which they were each created, whether de-
rived from taxation, the sale of bonds, or donations by the State
of Texas.

We can see no distinction in principles between this case
and that of the City of Sherman v. Williams, supra, and State v.
City of Houston, supra. In the Sherman case, the real property
involved was taken by the city in settlement made with a default-
ing tax collector who had collected taxes levied to pay the in-
terest and create a sinking fund on a certain bonded obligation
of the city, but did not account to the city for same. The court
held, as it did in the Houston case, that the property when sold
should be credited to the special fund. That part of the opinion
of the court, we consider pertinent here, reads as follows:

"The taxes collected could not have been appro-
priated to satisfaction of appellee's claim had they

Honorable George H. Sheppard, page 8

been paid over by the collector; and for the protection of the taxpayers as well as creditors, it seems to us that the property in controversy should be deemed a part of the fund, the misapplication of which made it necessary for the city to acquire title to it.

"If a taxpayer had failed to pay the tax on account of which the money was collected, then on sale of his property, if no bid was made, it would have been struck off to the city and a deed made to it, under which the city would have had the power to convey the property to a purchaser from it. Rev. Stat., Art. 449. The money received on such a sale would go to the fund on account of which the tax was levied, and we see no reason why the proceeds of the sale of the property in controversy should not belong to the fund on account of which the taxes never paid over by the collector were collected."

The facts before us disclose that when the depository bank failed, it was not only insolvent, but that the sureties on its bond given to the county to secure the county's funds and its available and permanent school funds were also insolvent, so that from the liquidation of the bank's assets and its bondsmen only 34% dividend was paid to the county which sum was credited pro rate to each of the accounts standing on the books of the depository to the credit of the county and its school funds. The county foreclosed its deed of trust lien on part of the land here involved and at its sale by the trustee purchased the same. The other lands involved were acquired by purchase from the depository bank's receiver for a nominal consideration. The lands have at all times since their purchase belonged to Kent County, subject to the indebtedness due the State as original purchase money. The county has never been able to find a purchaser for same at a fair and reasonable price. These lands were acquired by Kent County solely for the protection of the several funds above named; are clearly a part of each of said funds; and, as heretofore stated, whatever amount is received from the sale of the lands by the county will be credited proportionately to each of said funds. While only a particular special fund was involved in the Sherman case and the Houston case, we have here several special funds, some belonging to the county, others to school and road districts, also a very insignificant sum belonging to the county's general fund, all of which are certainly public funds. With no court decision directly in point to

Honorable George H. Sheppard, page 9

guide us, we have reached the conclusion that the lands are public lands of Kent County and as such are being held only for public purposes, therefore are exempt from all taxation for the years subsequent to the year in which the county acquired title thereto. The Murdoch land was acquired by the county in May, 1935, therefore it was not subject to taxation for the year 1936 or upon any subsequent year while it is so held and owned. We are not advised as to the date the title to the other lands here involved passed to the county.

The above stated conclusions constitute our answer to question No. 1.

However, the question of taxes which were delinquent at the time of and prior to the acquisition of the land present a rather difficult proposition. This is so because, so far as we have been able to ascertain, that precise question, as here presented, has never been before our courts.

In the case of Childress County v. State, 92 S.W. (2d) 1015, the Supreme Court in answering certified questions, speaking through Justice Sharp, said:

"The county is merely an arm of the State. It is a political subdivision thereof. In view of the relation of a county to the State, the State may use, and frequently does use, a county as its agent in the discharge of the State's functions and duties."

The court further said:

"While this precise question, so far as we know, has never been determined by this court, we think the great weight of authority sustains the rule that when the title to this land reverted to Childress County, the tax lien for State purposes became merged with the ownership of land by the county. This property, dedicated to a county exclusively for a public purpose, and having been sold by the county to individuals, who failed to comply with the contract of sale, whereupon the title to the land reverted to the county, cannot be burdened with taxes due the State during the time it was privately owned."

It is true that in the above case the court was considering county school land, which under Article 7, Section 6a of our Constitution, is taxable except for State purposes. But in that case the land had become private property and liable for State taxes. It then reverted back to the county with taxes for State purposes being delinquent. In so far as such delinquent taxes are for State purposes, we believe that the decision is applicable.

You are, therefore, advised that the tax lien for State taxes became merged with the title of Kent County and that neither the county nor the land can be held for such taxes.

The question of delinquent taxes other than those for State purposes present a still more complexing problem.

However, at the outset, we want to state that the decision of the Supreme Court in the case of Childress County v. State, supra, does not apply to this case insofar as taxes for purposes other than State are concerned.

Article 11, Section 9 of the Constitution of Texas, provides in part as follows:

"The property of counties * * * owned and held only for public purposes * * * shall be exempt from force sale * * *."

It is therefore, apparent that the land cannot be sold for taxes because we have heretofore held that the land is public property held for public purposes. Our holding is sustained by the case of State v. Stovall, 76 S. W. (2d) 206, (writ refused) wherein the court enjoined the sale of land under a tax judgment in favor of Rusk Independent School District, where the land had been acquired by the State for a public purpose before the tax judgment of the school district became final.

However, in the case of City of Dallas v. State, 28 S.W. (2d) 937, the court held that the city must pay the taxes due the State, county, road district and school district, which were delinquent before the purchase by the city. In that case the court did not discuss the merits of its holding and in view of the fact that we are bound by that decision, we shall not speculate on the court's reasons.

Honorable George H. Sheppard, page 11


       We, therefore, hold that Kent County is liable for all taxes due before the acquisition by the county, except taxes for State purposes.

APPROVED DEC 18, 1941

_____
FIRST ATTORNEY GENERAL

RHC:db

                               Yours very truly

                   ATTORNEY GENERAL OF TEXAS

             By _____
                         Richard H. Cocke
                           Assistant

APPROVED
OPINION
COMMITTEE
BY WTX
CHAIRMAN